## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| CYNTHIA ALLEN, individually and on behalf of others similarly situated, <br><br>　　　　　Plaintiff, <br>v. <br><br>AT&T MOBILITY SERVICES LLC a/k/a AT&T MOBILITY LLC and AT&T SERVICES, INC., <br><br>　　　　　Defendants. | Civil No. |

## <u>CLASS ACTION COMPLAINT</u>

Plaintiff Cynthia Allen brings this action against AT&T Mobility Services LLC a/k/a AT&T Mobility LLC ("AT&T Mobility") and AT&T Services, Inc. ("AT&T Services") (collectively "AT&T" or "the Company") on behalf of herself and others similarly situated for violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended by the Pregnancy Discrimination Act ("PDA"), 42 U.S.C. § 2000e *et seq.* Ms. Allen also brings individual claims under the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA"), and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*

Ms. Allen's claims arise out of and challenge the same policy promulgated by the same Defendants addressed in a case pending in the Northern District of Indiana, in which named plaintiff Katia Hills seeks to join Ms. Allen as a named plaintiff in the putative nationwide class action. *See Hills v. AT&T Mobility Servs. LLC, et al.*, No. 3:17-cv-005560JD-MGG (N.D. Ind. May 14, 2018), ECF No. 36. Ms. Hills and Ms. Allen are both represented by the same counsel. AT&T has opposed the motion to join Ms. Allen's classwide claims in the Indiana lawsuit, contending that the district court in Indiana lacks jurisdiction over the company for purposes of Ms. Allen's claims only. It has also opposed Ms. Hills's alternative proposal to transfer the pending Indiana case to the Northern District of Georgia, where AT&T Mobility

is headquartered and where there can be no dispute that jurisdiction exists over the claims advanced by Ms. Hills, Ms. Allen, and the other women on whose behalf they seek to act.  As the Indiana court has yet to rule on the motion to add Ms. Allen's claims, Ms. Allen has filed this action out of an abundance of caution to protect against the expiration of the limitations period governing her Title VII claims.

In support of her Class Action Complaint, Ms. Allen alleges and states the following:

## NATURE OF THE ACTION

1.    In amending Title VII by enacting the PDA, Congress recognized that "discrimination against pregnant women is one of the chief ways in which women's careers have been impeded and women employees treated like second-class employees."  123 Cong. Rec. 10,527 (1977) (statement of Rep. Hawkins).

2.    Pregnancy is a fact of life for employers and employees alike.  Almost 85 percent of women will have at least one pregnancy during their careers, and the vast majority of pregnant women experience at least "morning sickness" with their pregnancies—and frequently numerous other symptoms that interfere with work or are disabling.  Even an uncomplicated pregnancy requires regular doctor's visits, at increasing frequency as the pregnancy progresses.  And research estimates that over 250,000 women per year are denied the workplace accommodations they need for

their pregnancies, including excused absences for medical care.

3.    Ms. Allen experienced precisely the type of discrimination that the PDA sought to remedy.  Specifically, she faced discrimination and suffered adverse employment consequences—including, ultimately, termination—when AT&T refused to "excuse" absences for pregnancy, childbirth, and related medical conditions under its "Sales Attendance Guidance" ("SAG") policy.

4.    AT&T's SAG policy—which applied to Ms. Allen and continues to apply to non-exempt, non-managerial employees in company-owned stores—imposes a "point" or a fraction of a "point" for unexcused absences from work, late arrivals, or early departures.  Once an employee exceeds a threshold of points, she is terminated.  Points also impact an employee's ability to be promoted and to transfer stores.

5.    Although the SAG policy provides for excused absences, late arrivals, or early departures in thirteen delineated situations—including "Approved leave of absence," "Approved Short Term Disability," "Approved Job Accommodations," and "Federal/State/Municipal mandated Leaves (i.e., FMLA, ADAAA, etc.)," *see infra* ¶ 27—nowhere does the policy mention pregnancy, childbirth, or related medical conditions.

6.    The SAG policy applies company-wide and is administered by AT&T's

Centralized Attendance Group ("CAG").

7.      Upon information and belief, AT&T assigned points to Ms. Allen for her absences, late arrivals, and early departures related to pregnancy, childbirth, and related medical conditions, while routinely overlooking the absences, late arrivals, and early departures of coworkers similar in their ability or inability to work.

8.      AT&T's refusal to excuse absences, late arrivals, and early departures related to pregnancy, childbirth, or related medical conditions constitutes intentional discrimination in violation of Title VII.

9.      Furthermore, upon information and belief, AT&T's SAG policy has a disparate impact on female workers affected by pregnancy, childbirth, or related medical conditions, in violation of Title VII.

10.     Ms. Allen therefore brings Title VII claims on behalf of herself and all non-exempt, non-managerial female employees in AT&T's corporate stores nationwide who were denied excused absences pursuant to AT&T's SAG policy.

11.     Ms. Allen further brings an individual claim under the ADA for AT&T's failure to provide reasonable accommodations for her pregnancy-related disabilities and an individual claim under the FMLA for AT&T's interference with and retaliation against her for her efforts to obtain excused absences for her pregnancy and to care for her sick son.

5

## JURISDICTION AND VENUE

12.    This Court has jurisdiction over this matter pursuant to 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1331.

13.    Venue is proper in this District under 28 U.S.C. § 1391 because AT&T Mobility is headquartered here, and upon information and belief, the development and implementation of the SAG policy by both Defendants occurred within this District.

## PARTIES

14.    Plaintiff Cynthia Allen is a woman and a resident and citizen of Las Vegas, Nevada.  From approximately December 2012 through April 2017, Ms. Allen was an employee of AT&T Mobility in its retail stores at 2540 Broadway, 30 Rockefeller Plaza, and 16 W. 34th Street in New York City and 920 South Rampart Boulevard in Las Vegas, Nevada.

15.    AT&T Mobility is a limited liability corporation organized under the laws of Delaware, with its principal place of business in Atlanta, Georgia.  AT&T Mobility is a subsidiary of AT&T, Inc.  On information and belief, at all relevant times, AT&T Mobility was engaged in commerce or an industry affecting commerce within the meaning of the FMLA, employed in excess of 50 employees during each of 20 or more calendar workweeks, and was an "employer" within the meaning of

6

Title VII (as amended by the PDA) and the FMLA.

16.    AT&T Services, Inc. is a shared services company incorporated under the laws of Delaware, with its principal place of business in Dallas, Texas.  AT&T Services is a subsidiary of AT&T, Inc.  On information and belief, at all relevant times, AT&T Services was engaged in commerce or an industry affecting commerce within the meaning of the FMLA, employed in excess of 50 employees during each of 20 or more calendar workweeks, and was an "employer" within the meaning of the FMLA.  Also on information and belief, AT&T Services authored and otherwise controlled the policies and decisions governing Plaintiff's employment, including but not limited to policies and decisions with respect to attendance and FMLA benefits.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

17.    On February 20, 2018, Ms. Allen filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that AT&T engaged in sex, pregnancy, and disability discrimination, as well as retaliation, in violation of Title VII (as amended by the PDA) and the ADA.  Ms. Allen's charge included class-wide allegations.

18.    In connection with a case raising classwide challenges against the same corporate policy and the same defendants in the Northern District of Indiana, Ms.

Allen requested her Right to Sue letter from the EEOC on April 30, 2018 upon direction from the Indiana court. She received that letter on May 7, 2018.

19. The named plaintiff in the Indiana case, Ms. Katia Hills, has sought to add Ms. Allen as a named plaintiff before that Court, *see Hills v. AT&T Mobility Servs. LLC*, No. 3:17-cv-00556-JD-MGG (N.D. Ind. May 14, 2018), ECF No. 36, which has been contested by AT&T and remains pending before that Court.

20. AT&T has also opposed Ms. Hills's and Ms. Allen's suggestion that, in the alternative, the case be transferred to this district where AT&T Mobility is headquartered and where there can be no question as to the Court's jurisdiction over Ms. Hills's and Ms. Allen's claims, as well as those of other women who have also come forward to challenge AT&T's policy.

21. In order to protect against an expiring limitations period for her Title VII and ADA claims—which expires on August 6, 2018—Ms. Allen now files the present case in this Court. This Complaint is timely filed within Ms. Allen's 90-day filing period.

## FACTS GIVING RISE TO THIS ACTION

### A.    AT&T's ATTENDANCE POLICY

22. AT&T maintains a Sales Attendance Guidance ("SAG") policy for non-exempt, non-managerial AT&T Mobility employees in company-owned retail

stores, which governs the attendance policies and procedures in its stores nationwide.  Upon information and belief, AT&T has maintained such an attendance policy for the duration of Ms. Allen's employment with the Company; such a policy was in place when Ms. Allen joined AT&T.

23.    Under this policy, AT&T assigns a "point" or a fraction of a point to an employee who is absent, arrives late, or departs early.  Sales associates retain points they have incurred for approximately twelve months.

24.    After an employee receives approximately four points, AT&T may limit her ability to transfer to another store or be promoted.  Upon information and belief, after approximately seven points, it may put her on "final notice."  And, upon information and belief, AT&T may terminate her after approximately eight points, as determined by the Company in its sole discretion.

25.    AT&T's policy states that absences, early departures, or late arrivals may be excused only if they fall within a specified set of categories, limited to the following:

- o Approved leave of absence
- o Scheduled/Approved vacation
- o Jury Duty
- o Qualified bereavement
- o Military Leave
- o Company recognized Holidays (unless scheduled to work on a Holiday)
- o Approved Short Term Disability

9

- o  Approved Job Accommodations
- o  Federal/State/Municipal mandated Leaves (i.e., FMLA, ADAAA, etc.)
- o  Company initiated closings (i.e. inclement weather, etc.)
- o  Contracted time off (Union business)
- o  Court subpoena (excused to extent as outlined per Labor Agreement)
- o  Approved/Company Mandated Time Off (i.e., EWP, vacation, disciplinary time, etc.)

26.    Despite enumerating thirteen bases for excused absences, the SAG policy on its face does not list pregnancy, childbirth, or related medical conditions.

27.    The SAG policy further requires that employees report absences or other needed schedule changes to AT&T at least one hour before their shift.

28.    The SAG policy also provides that if an employee accrues a specified number of points within a twelve-month period, for "any unscheduled time away" from their shift "regardless of reason," this "will result in termination absent extraordinary circumstances as determined by the Company in its sole discretion."

29.    Upon information and belief, AT&T's Centralized Attendance Group ("CAG") administers the SAG policy and determines whether an employee's time out of work is "excused."

30.    An employee can receive "combined discipline"—i.e., more than one disciplinary action—"up to and including termination" for multiple points accrued during an extended unexcused absence or series of absences.

## B.    CYNTHIA ALLEN

31.    Ms. Allen worked for AT&T from approximately December 2012 until late April 2017, when she was terminated apparently because her accrued-points balance violated Company policy.

32.    Ms. Allen worked in several AT&T stores in New York City, including 2540 Broadway, 30 Rockefeller Plaza, and 16 W. 34th Street (the "Empire State Building Store").   In September 2016, she transferred to the store at 920 South Rampart Blvd., Las Vegas, Nevada (the "Las Vegas Store"), where she worked for the rest of her tenure with AT&T.

33.    In New York, Ms. Allen began as a Sales Support Representative and was promoted to Retail Sales Consultant and then Team Lead/Retail Sales Consultant.   In these roles, she was responsible for selling cellphones, tablets, and cell and data plans; greeting customers; performing some back-office functions; and—as Team Lead—opening and closing the store and supervising other Retail Sales Consultants.

34.    Ms. Allen performed well in these roles, had good relationships with her store managers and coworkers, and received positive reviews.

35.    While working for AT&T, Ms. Allen became pregnant three times; all of her pregnancies were high risk, and her first two pregnancies resulted in

11

miscarriages.

36.    She sought assistance in obtaining excused leave for her pregnancy and related doctors' visits from her store managers, who provided her with paperwork from AT&T and instructed her to submit that paperwork to AT&T.  Ms. Allen was further informed that absences would be excused if they were accompanied by paperwork from a doctor.

37.    During her first two pregnancies, under an earlier version of the SAG policy, Ms. Allen sought and received excused leave for her pregnancy-related medical needs.

38.    In March 2016, while an employee at the Empire State Building Store, Ms. Allen learned that she was pregnant again.  During her third pregnancy, Ms. Allen suffered from hyperemesis gravidarum (extreme and constant morning sickness that prevented her from eating and staying sufficiently hydrated) and placenta previa (a condition where the placenta covers the cervix and can require an emergency caesarian section).  Both conditions were particularly acute, requiring ongoing and emergency medical care and restricting her ability to work or travel. Those conditions also qualified as "disabilities" within the meaning of the ADA.

39.    Ms. Allen had to take several days off in each month from April through September 2016 to treat these conditions.  She followed the same procedures for

obtaining excused absences under the new policy that she had used during her prior two pregnancies under the former policy. She was never informed by AT&T of any points accruing for her pregnancy-related absences and took efforts to ensure that AT&T had the required documentation to excuse her absences.

40.    In September 2016, Ms. Allen left New York and transferred to the Las Vegas store as a Retail Sales Consultant; upon information and belief, her points balance at that time was around three, low enough to permit her transfer under AT&T's policy.

41.    Ms. Allen continued to experience pain and other debilitating conditions arising from her pregnancy and related disabilities, sometimes requiring hospitalization.

42.    After her transfer to the Las Vegas Store, Ms. Allen was unable to secure excused absences from AT&T and faced hostility from her store manager, Rick Church, when she sought information about excused absences or FMLA leave from AT&T under its SAG policy. He often did not respond to her requests for such assistance. AT&T assigned Ms. Allen points that led to her termination for the incidents for which she had requested Mr. Church's assistance.

43.    Despite Ms. Allen having informed the Company about her pregnancy and related medical conditions, including her pregnancy-related disabilities, AT&T

took no steps to initiate discussions with Ms. Allen about reasonable accommodations for her pregnancy or disabilities, or about her FMLA rights.

44.    Ultimately, Ms. Allen was forced to take FMLA leave from approximately Thanksgiving 2016 until her son was born on December 8, 2016.

45.    Mr. Church directed Ms. Allen to speak with Integrated Disability Services Center, a third party that managed AT&T's disability leave, to obtain FMLA or disability coverage for that leave; Ms. Allen attempted unsuccessfully to navigate this process until she gave birth, when she began her maternity leave.  Upon information and belief, she later accrued points for the dates for which she sought FMLA and/or disability leave.

46.    Ms. Allen returned to work on February 8, 2017.  At that time, Mr. Church informed her that she was on a "final notice" because she had accumulated over twenty attendance points.  Ms. Allen had believed these absences had been classified as FMLA leave and thus excused by AT&T.

47.    When she questioned him about these points, Mr. Church informed Ms. Allen that he had no control over her points and that there was nothing he could do. Instead, he indicated that AT&T's CAG—which was responsible for approving and disapproving points—had control over any points she received.

48.    Ms. Allen sought assistance from her current and former store

14

managers, AT&T's Human Resources Department, and AT&T's CAG, but no one helped her correct her attendance record or explained to her how AT&T had issued so many points of which she was unaware.

49.     She also tried to contest the points through AT&T's internal system and was told that points could be removed only with the approval of AT&T's Area Manager, Ltanya Robnett.  Ms. Robnett was similarly unhelpful; she declined to remove the points, but agreed to speak further with AT&T's Human Resources Department about Ms. Allen.  Ms. Allen never received any further response or information from Ms. Robnett.  Ms. Allen also sought assistance from an unknown corporate employee with authority to address attendance-related issues, but this employee did not respond to Ms. Allen's calls or emails.

50.     On or around March 21 and 22, 2017, Ms. Allen's newborn son became sick and required emergency medical care.  Mr. Church agreed in a text message to take Ms. Allen off the schedule and let her make up the time later in the week.  He further informed Ms. Allen that he could not assist her with FMLA leave and directed her to AT&T's MyWorkLife application (the "app").  But the app did not work, and Mr. Church did not offer other avenues for requesting leave.  In Ms. Allen's experience, the app never worked for FMLA leave requests, and Ms. Allen was unaware of any other avenues to petition for FMLA leave.

51.    When she returned to work on March 22, Ms. Allen learned that Mr. Church had not removed her from the schedule during her son's illness after all, and that AT&T had instead issued points for her absences, notwithstanding documentation from her son's doctor.

52.    Ms. Allen's son again required emergency medical care on or around March 31, 2017, and Ms. Allen contacted Mr. Church to be removed from the shift and provided him with documentation.  Ms. Allen returned to work the following day, on or around April 1, 2017.

53.    Throughout this period, Ms. Allen continued to follow up with Ms. Robnett and other AT&T corporate employees concerning the improperly unexcused points she had received.  She received no assistance from the Company.

54.    Three weeks after her son's illness, Ms. Allen was terminated, notwithstanding the fact that virtually all of her absences were pregnancy-, disability- and/or FMLA-related.

## <u>CLASS ACTION ALLEGATIONS</u>

55.    Pursuant to Federal Rule of Civil Procedure 23, Ms. Allen brings claims for AT&T's violation of Title VII (as amended by the PDA).

56.    Ms. Allen brings these claims on behalf of herself and all non-exempt, non-managerial female employees in AT&T's corporate retail stores nationwide

who were denied excused absences pursuant to AT&T's Sales Attendance Guidance policy.

57.    Ms. Allen asserts the following class-wide violations of Title VII:

a.    AT&T's actions constitute disparate treatment and evidenced discriminatory intent when the Company failed to include pregnancy, childbirth, or related medical conditions in its SAG policy as conditions warranting exemption from point accrual, despite enumerating thirteen other reasons for excused absences; and

b.    AT&T's SAG policy and practices also impose a disparate impact on women affected by pregnancy, childbirth, or related medical conditions.

58.    The proposed class is easily ascertainable.  The number and identity of class members may be determined from AT&T's records.

59.    The proposed class also meets all the requirements of Rule 23(a) and (b)(3):

a.    Numerosity:  Upon information and belief, the proposed class is at least several hundred individuals.  This class size is so numerous that joinder of all class members is impracticable.  In addition, the disposition of these individuals' claims as a class will benefit both the parties and the Court.

     b.      Commonality:  Ms. Allen and the members of the proposed class she seeks to represent have all been harmed by AT&T's SAG policy in that they have received points, discipline, and/or been terminated because of their sex (pregnancy).  The common questions in this case include, but are not limited to:

            i.      Whether AT&T's SAG policy and/or its attendance practices treated pregnancy, childbirth, and related medical conditions differently from other absences in violation of Title VII (as amended by the PDA);

            ii.      Whether AT&T's SAG policy and/or its attendance practices had a disparate impact on pregnant women; and

            iii.      Whether AT&T's SAG policy and/or its conduct relating to the policy was malicious or in reckless indifference to Plaintiff's and the putative class members' legal rights.

     c.      Typicality:  Ms. Allen and the members of the proposed class were subject to the same unlawful policies, practices, and procedures and suffered similar harms.  All putative class members were subject to AT&T's SAG policy and all experienced adverse employment consequences from absences due to pregnancy, childbirth, and related medical conditions.  Ms.

Allen's claims therefore are typical of the claims that could be brought by any member of the class, and the relief sought is typical of the relief that could be sought by each member of the class in separate actions.

        d.      Adequacy of Representation:  Ms. Allen is able to fairly and adequately protect the interests of all members of the class, as she is challenging the same practices as the class as a whole, and there are no known conflicts of interest between Ms. Allen and the members of the proposed class. Ms. Allen has retained counsel who are experienced and competent in employment discrimination claims and in complex class-action litigation.

        e.      Predominance and Superiority:   The common questions identified above predominate over any individual issues.  A class action is superior to other available means for the fair and efficient adjudication of this controversy.  Individual joinder of all class members is impracticable.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the necessary duplication of effort and expense that numerous individual actions engender.  Because the losses, injuries, and damages suffered by each of the individual class members are small in the sense pertinent to class action analysis, the expense and burden of individual

litigation would make it extremely difficult or impossible for the individual class members to redress wrongs done to them.

   f. At the same time, important public interests will be served by addressing the matter as a class action.  Prosecution of separate actions by individual members of the proposed class would create a risk of inconsistent and/or varying adjudications, establishing incompatible standards of conduct for AT&T and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof.  In addition, if appropriate, the Court can and is empowered to fashion methods to efficiently manage this action as a class action.

   g. Pursuit of this action on behalf of a class will provide the most efficient mechanism for adjudicating the claims of Ms. Allen and the members of the proposed class.

**FIRST CAUSE OF ACTION**
**Title VII, 42 U.S.C. §§ 2000e-2(a), 2000e(k)**
**Disparate Treatment Because of Sex (Pregnancy)**
**On Behalf of Plaintiff Cynthia Allen and the Putative Class**

  60. Ms. Allen realleges and incorporates by reference, as if fully set forth herein, each and every allegation of this Complaint.

20

61.    Upon information and belief, AT&T discriminated against Ms. Allen and the putative class members by treating them differently from other non-pregnant employees in their ability to obtain leave and/or accommodations for their pregnancies and/or related medical conditions or disabilities, in violation of Title VII, as amended by the PDA.

62.    Upon information and belief, AT&T had and continues to have a regular policy or procedure of unlawfully discriminating against women on the basis of their pregnancy, childbirth, or related medical conditions.

63.    Upon information and belief, this regular policy or procedure was intentional.

64.    As a result of AT&T's unlawful sex discrimination, Ms. Allen and the class she seeks to represent have suffered significant monetary loss, including loss of earnings, backpay, and other benefits; emotional pain and suffering; and other non-pecuniary losses.

**SECOND CAUSE OF ACTION**
**Title VII, 42 U.S.C. §§ 2000e-2(a), 2000e(k)**
**Disparate Impact Because of Sex (Pregnancy)**
**On Behalf of Plaintiff Cynthia Allen and the Putative Class**

65.    Ms. Allen realleges and incorporates by reference, as if fully set forth herein, each and every allegation of this Complaint.

21

66.    Upon information and belief, AT&T's SAG policy—which permits the Company to excuse absences for thirteen different reasons, including approved short-term disability; approved job accommodations; and leave protected by the FMLA, ADAAA, and other relevant federal, state, and municipal laws, but which does not mention pregnancy, childbirth, or related medical conditions and does not define what constitutes a permissible job accommodation—has a disparate impact on women, in violation of Title VII of the Civil Rights Act of 1964, as amended by the PDA.

67.    As a result of AT&T's unlawful sex discrimination, Ms. Allen and the class she seeks to represent have suffered significant monetary loss, including loss of earnings, backpay, and other benefits; emotional pain and suffering; and other nonpecuniary losses.

## THIRD CAUSE OF ACTION
### Title I of the ADA, 42 U.S.C. §§ 12112(a), (b);
### 29 C.F.R. §§ 1630.2(o), 1630.4, 1630.9
### Failure to Provide a Reasonable Accommodation
### On Behalf of Plaintiff Cynthia Allen

68.    Ms. Allen realleges and incorporates by reference, as if fully set forth herein, each and every allegation of this Complaint.

69.    AT&T discriminated against Ms. Allen, an otherwise qualified individual with a disability, because of her known disability by failing to provide her

with reasonable accommodations that were available and did not pose undue hardship, in violation of the ADA.

70.    AT&T failed to engage in an interactive process with Ms. Allen to identify the limitations resulting from her disability and potential accommodations that could overcome those limitations.

71.    AT&T's SAG policy further facially discriminated against Ms. Allen in violation of the ADA by failing to provide for leave or other reasonable accommodations related to her ADA-covered disabilities.

72.    As a result of AT&T's unlawful disability discrimination, Ms. Allen has suffered significant monetary loss, including loss of earnings and other benefits; emotional pain and suffering; and other nonpecuniary losses.

73.    AT&T's unlawful disability discrimination was undertaken either with malice or with reckless indifference to Ms. Allen's rights under the law.

**FOURTH CAUSE OF ACTION**
**FMLA, 29 U.S.C. §§ 2601 *et seq*.**
**Interference**
**On Behalf of Plaintiff Cynthia Allen**

74.    Ms. Allen realleges and incorporates by reference, as if fully set forth herein, each and every allegation of this Complaint.

75.    AT&T violated the FMLA by unlawfully interfering with, restraining,

23

or denying the exercise of Ms. Allen's FMLA rights by, *inter alia*, discouraging her from taking leave, imposing unnecessary and burdensome obstacles on her ability to request and access the leave, denying her the ability to use that leave, and awarding points—up to and including termination—for using that leave.

76.     As a result of AT&T's unlawful conduct in violation of the FMLA, Ms. Allen has suffered harm for which she is entitled to an award of damages and backpay.

77.     AT&T's unlawful actions constitute bad faith and were malicious, willful, and wanton violations of the FMLA for which Ms. Allen is entitled to an award of liquidated damages.

## FIFTH CAUSE OF ACTION
### FMLA, 29 U.S.C. §§ 2601 *et seq*.
### Retaliation
### On Behalf of Plaintiff Cynthia Allen

78.     Ms. Allen realleges and incorporates by reference, as if fully set forth herein, each and every allegation of this Complaint.

79.     Ms. Allen was an "eligible employee" within the meaning of the FMLA.

80.     At all times relevant herein, AT&T was and is a "covered employer" within the meaning of the FMLA.

24

81.     AT&T violated the FMLA by unlawfully retaliating against Ms. Allen for exercising her FMLA rights by, *inter alia*, refusing to credit qualifying absences as intermittent leave and instead penalizing her with "points," resulting in her discharge.

82.     As a result of AT&T's unlawful conduct in violation of the FMLA, Ms. Allen has suffered harm for which she is entitled to an award of damages.

83.     AT&T's unlawful actions constitute bad faith and were malicious, willful, and wanton violations of the FMLA for which Ms. Allen is entitled to an award of liquidated damages.

## **PRAYER FOR RELIEF**

For the foregoing reasons, Ms. Allen respectfully requests that the Court grant the following relief:

A.     Declaratory relief, including but not limited to a declaration that AT&T violated Title VII (as amended by the PDA), the ADA, and the FMLA;

B.     Injunctive relief, including but not limited to revision of AT&T's attendance policies to comply with Title VII (as amended by the PDA), the ADA, and the FMLA;

C.     Compensation for loss of income;

D.     Compensatory and consequential damages, including for emotional

25

distress;

E.    Punitive damages;

F.    Liquidated damages,

G.    Pre-judgment and post-judgment interest at the highest lawful rate;

H.    Costs incurred, including reasonable attorneys' fees to the extent

allowable by law; and

I.    Such other relief as the Court deems just and proper.

## **JURY DEMAND**

Ms. Allen demands a jury trial on the matters alleged herein.

Dated:  August 3, 2018                    Respectfully submitted,

                                          */s/Sean J. Young*_____
                                          Sean J. Young (Georgia Bar No. 790399)
                                          American Civil Liberties Union Foundation
                                               of Georgia, Inc.
                                          P.O. Box 77208
                                          Atlanta, GA 30357
                                          Telephone: (678) 981-5295
                                          syoung@acluga.org

                                          Kalpana Kotagal*
                                          Cohen Milstein Sellers & Toll PLLC
                                          1100 New York Avenue, Suite 500
                                          Washington, DC 20005
                                          Telephone: (202) 408-4600
                                          Fax: (202) 408-4699
                                          kkotagal@cohenmilstein.com

Lenora M. Lapidus**
Gillian L. Thomas**
American Civil Liberties Union
Women's Rights Project
125 Broad Street, 18th Floor
New York, NY  10004
Telephone: (212) 549-2500
llapidus@aclu.org
gthomas@aclu.org

*pro hac vice* application pending
**pro hac vice* application forthcoming