# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

CYNTHIA ALLEN and KRISTINE WEBB,

       Plaintiffs,

v.

AT&T MOBILITY SERVICES LLC
a/k/a AT&T MOBILITY LLC,

       Defendant.

Civil No. 1:18-cv-3730-WMR

## SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION
## FOR CLASS CERTIFICATION

# TABLE OF CONTENTS

<u>Page</u>

I.    INTRODUCTION ............................................................................1

II.   CLASSWIDE STATISTICAL ANALYSES USING CORRECTED
      DATA CONFIRM DISPARITIES ADVERSE TO PREGNANT
      EMPLOYEES IN DISCIPLINE....................................................3

III.  AT&T MOBILITY'S ARGUMENTS AT STATUS CONFERENCE
      ARE AT ODDS WITH THE COMPANY'S ATTENDANCE
      POLICIES AND PRACTICES ......................................................8
      A.    There is No Dispute that AT&T Mobility Has Applied the SAG
            Policy Uniformly and Consistently Across Retail Employees
            for the Entire Period Covered by This Case.........................8
      B.    The Facially Discriminatory and Burdensome Nature of AT&T
            Mobility's Attendance Structure for Pregnant Employees is
            Common to the Class. .........................................................9

IV.   CONCLUSION..............................................................................15

# TABLE OF AUTHORITIES

**Page**

CASES

*Durham v. Rural/Metro Corp.*,
   955 F.3d 1279 (11th Cir. 2020) ............................................................9

*Hicks v. City of Tuscaloosa*,
   870 F.3d 1253 (11th Cir. 2017) ............................................................9

*Ingram v. Corp. Receivables, Inc.*,
   No. 02 C 6608, 2003 WL 21982152 (N.D. Ill. Aug. 19, 2003) ............9

*Nelson v. Conduent Bus. Servs. LLC*,
   No. 1:18-CV-00669-SDG, 2020 WL 5587450 (N.D. Ga. Sept. 18,
   2020) ...................................................................................................12

*Pizarro v. Home Depot, Inc.*,
   No. 1:18-CV-01566-WMR, 2020 WL 6939810 (N.D. Ga. Sept. 21,
   2020) .....................................................................................................9

*Scott v. Family Dollar Stores, Inc.*,
   733 F.3d 105 (4th Cir. 2013) ................................................................9

*Thompson v. Jackson*,
   No. 1:16-CV-04217, 2018 WL 5993867 (N.D. Ga. Nov. 15, 2018).....9

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011).............................................................................9

*Young v. United Parcel Service, Inc.*,
   135 S. Ct. 1338 (2015).......................................................9, 10, 11, 13

STATUTES AND REGULATIONS

Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k) ...........................10

Americans with Disabilities Act, 29 C.F.R. §1630.2 .............................13

OTHER AUTHORITIES

Federal Rule of Civil Procedure 23 ......................................................3, 9

## I.  INTRODUCTION

This supplemental memorandum of law addresses two developments since Plaintiffs moved for class certification on September 14, 2020.  Dkt. 85-1.  First, it describes the core findings in the supplemental report of Plaintiffs' expert, Dr. Janice Madden, based on her analysis of Defendant AT&T Mobility's updated discipline data ("corrected data" or "corrected discipline data") produced after Dr. Madden completed her original report.[1]  Dr. Madden's original results showed substantial disparities adverse to pregnant workers – both with respect to excused absences as well as attendance-related discipline – at levels that are strongly statistically significant, resulting from the Sales Attendance Guidelines ("SAG") policy.  In her supplemental report, Dr. Madden replicated the analyses of attendance-related discipline using the corrected data.  The updated analysis confirms the strength of Dr. Madden's original findings showing disparities adverse to pregnant workers, with many results also showing increased statistical significance.   AT&T Mobility

---

[1] On November 13, 2020, shortly before it was scheduled to file its opposition to Plaintiffs' motion for class certification, AT&T Mobility disclosed that it had inadvertently produced incomplete data regarding attendance-related discipline of employees.  It had not produced complete discipline records, *i.e.*, records on open, closed, and pending discipline cases, but instead had produced only records concerning the most recent step of its four-step discipline process.  Dkt. 90.  The parties agreed upon a revised schedule permitting the production of the corrected data and this supplemental filing in support of Plaintiffs' motion for class certification.  Dkt. 91.

imposes more discipline on pregnant workers than their non-pregnant peers as a direct result of its SAG policy, consistent with Plaintiffs' allegations that the policy violates the Pregnancy Discrimination Act ("PDA").

Second, Plaintiffs briefly address two issues raised by AT&T Mobility during the status conference convened by the Court on December 10, 2020. Defendant confirmed that the SAG policy does not permit any discretion in its application and, therefore, attendance points and discipline flow directly from unexcused absences.[2]  With this admission, Defendant confirmed a core characteristic of the SAG policy that makes Plaintiffs' claims susceptible to classwide adjudication:   Plaintiffs challenge companywide attendance and discipline policies and practices that apply uniformly across the proposed class.

In addition, AT&T Mobility contended that class members accrue points for pregnancy-related absences only when they fail, on an individual basis, to submit the requisite medical documentation.[3]  This is a misleading distraction, at odds with the terms of the SAG policy itself.  The SAG policy explicitly burdens pregnant workers more than other workers needing excused absences.  This differential treatment of pregnant workers is apparent in policy

---

[2] December 10, 2020 Telephone Conference Transcript at 20:9-21:8 ("Hr'g Tr."), Dkt. 96.
[3] Hr'g Tr. 17:12-18:17.

documents and corporate witness testimony as well as Dr. Madden's statistical analyses showing that AT&T Mobility imposes more discipline on pregnant workers, and excuses fewer of their absences, as compared to non-pregnant employees similar in their ability or inability to work. The SAG policy's uniformity, the lack of discretion in its implementation, and the increased burdens placed on pregnant workers together with Dr. Madden's classwide analysis establish that the issues in this case can be determined in a manner common to the class and support a finding that Plaintiffs have satisfied the elements of Rule 23(a) and (b)(3).[4]

## II.  CLASSWIDE STATISTICAL ANALYSES USING CORRECTED DATA CONFIRM DISPARITIES ADVERSE TO PREGNANT EMPLOYEES IN DISCIPLINE

Plaintiffs allege that AT&T Mobility's "point"-based SAG policy violates the PDA by treating pregnant workers' absences less favorably than those of their non-pregnant, similarly situated peers.[5] Dr. Madden's original report confirmed that AT&T Mobility refuses to excuse absences of and imposes attendance-related discipline on pregnant employees at significantly higher rates as compared to non-pregnant employees.[6] In her study of

---

[4] *See* Memorandum in Support of Motion for Class Certification ("Class Cert. Mem.") at 24-39, Dkt. 85-1.

[5] Class Cert. Mem. at 1-3.

[6] Report of Dr. Janice Madden ("Madden Report"), at 3, 27-28, attached to Dkt. 85-1 as Ex. 23.

discipline, Dr. Madden considered the patterns of discipline imposed pursuant to the SAG policy and Progressive Discipline Policy, to determine whether pregnant workers receive their expected share of discipline.[7]

Controlling for a variety of relevant factors, including an employee's length of tenure at AT&T Mobility, Dr. Madden determined in her original report that 45.9% of pregnant workers received a counseling notice, compared to only 31.6% of all non-pregnant workers and compared to 31.3% of all non-pregnant women workers, disparities that are highly statistically significant

---

[7] Supplemental Report of Dr. Janice Madden ("Madden Supp. Report"), at 11-12, Ex. 46. For ease of reference, exhibits to this supplemental memorandum have been assigned continuous numbers following those in Plaintiffs' memorandum in support of their motion for class certification.

As discussed in Plaintiffs' memorandum in support of their motion for class certification, AT&T Mobility's Progressive Discipline Policy is incorporated into the SAG policy and places employees on the following steps of discipline for accruing attendance points: (1) counseling notice, (2) written warning, (3) final written warning, and (4) termination.   Progressive Discipline Policy, DEF0004737-44, attached to Dkt. 85-1 as Ex. 10; 2015 SAG policy, DEF0002749, attached to Dkt. 85-1 as Ex. 3 (describing point thresholds for each level of discipline); *see also* Class Cert. Mem. at 8 (denial of requests for excused absences, imposition of points and discipline are adverse employment actions under the PDA).  The imposition of points under the SAG policy, which remain on an employee's record for twelve months, leads to the imposition of discipline once a certain threshold is hit; moreover, any discipline on an employee's record "may render an employee ineligible for certain opportunities," including the availability of transfers and promotions. *See* 2015 SAG COR FAQ, DEF0002917-18, Ex. 47; Before You Nominate, DEF0002034, attached to Dkt. 85-1 as Ex. 11.  Discipline progresses toward termination. Ex. 10 at DEF0004741; *see, e.g.*, Class Cert. Mem. at 25-26.

(13.89 and 13.39 standard deviations, respectively).[8]   Similar results were presented for written warnings and final written warnings.  Overall, pregnant workers received a mean of 2.25 disciplinary events, as compared to the 1.52 mean disciplinary results imposed on all non-pregnant workers and the 1.50 mean disciplinary results imposed on all non-pregnant women workers, disparities adverse to pregnant workers with standard deviations of 19.37 and 18.74, respectively.[9]

After AT&T Mobility produced corrected discipline records, Dr. Madden repeated her analysis relating to the imposition of discipline using the corrected data and the same methods she used for her original report.[10]   Her conclusions remain robust: AT&T Mobility imposes more attendance-related discipline on pregnant workers as compared to similarly situated, non-pregnant workers, disparities that are highly statistically significant across the board.[11]   The additional observations in the corrected discipline data in some

---

[8] *See* Madden Report at 17 and Tbl. 2a, Ex. 23.

[9] Madden Supp. Report, at Tbl. 2a, Ex. 46.

[10] Pages 15 through 25 of Dr. Madden's original report and accompanying tables 2a, 2b, and 3 are affected by the corrected data.  Dr. Madden did not revise or duplicate analyses not implicated by the production of the completed discipline data.  *See* Madden Supp. Report at 3, Ex. 46.

[11] Similarly situated workers are those in jobs subject to the SAG policy in AT&T Mobility's corporate-owned retail stores, *see* Class Cert. Mem. at 4, and are divided up for purpose of comparison into several categories: all non-pregnant workers, non-pregnant women workers, workers in the same jobs who received excused absences for reasons other than pregnancy under the

cases increased the size of the disparities and/or strengthened the precision[12] of the results showing that women received significantly more discipline from absences during and after their pregnancy than before they were pregnant, evidence which is common to the class. In one instance, Dr. Madden's analysis of the corrected data confirmed that pregnant workers "were significantly more likely (in excess of three standard deviations)" to receive a counseling discipline than *all* their comparators; a result she did not reach with respect to all categories of workers in her original report using the incomplete discipline data.[13]

For example: Dr. Madden found that pregnant workers face even more substantial disparities:

- **Comparing Pregnant Workers to Similarly Situated Workers: Counseling discipline** is imposed on 74 percent (previously 45.9 percent) of pregnant workers, as compared to 57.1 percent (previously 31.6 percent) of non-pregnant workers.[14] The statistical significance associated with that result has nearly doubled to 4.34 standard deviations.
- **Written warnings** are imposed on 70.1 percent (previously 52.2 percent) of pregnant workers, as compared to 55.4 percent (previously 37.5 percent) of all non-pregnant workers, a substantial disparity with very high statistical significance (13.37 standard deviations).

SAG policy, and non-pregnant women receiving a SAG excuse of any kind. Madden Report at 8-9, Ex. 23 (defining categories).

[12] Madden Supp. Report at 16, Ex. 46.

[13] Madden Supp. Report at 5-6 and 6, n.5, Ex. 46.

[14] *Compare* Madden Report at 17, Ex. 23, *with* Madden Supp. Report at 5 and Tbl. 2a, Ex. 46.

- Pregnant workers were assigned an average of 4.73 **disciplinary events** (previously at 2.25), while their non-pregnant comparators received an average of 3.33 such events (previously 1.52), a result that is statistically significant at 16.20 standard deviations.

- **Comparing Pregnant Workers to Themselves (When Not Pregnant):** The corrected discipline data also sharpened Dr. Madden's conclusions regarding the harsh disciplinary conditions for pregnant retail workers when compared to their own disciplinary records before their pregnancy.  Using a method of analysis known as a probit regression analysis, Dr. Madden controls for durations of time when employees were pregnant and were not pregnant.[15]

- Dr. Madden finds, for example, that: "The likelihood of a pregnant worker receiving a final written warning is 8.69 standard deviations greater than before she became pregnant."[16]  "The likelihood of a worker receiving a final written warning during the entire period after becoming pregnant is 8.45 standard deviations greater than before she became pregnant."[17]

The corrected data also underscores the centralized nature of AT&T Mobility's attendance regime as the results reported confirm that AT&T Mobility consistently follows its policy for assigning attendance-related discipline.[18]  As discussed in Plaintiffs' memorandum in support of their

---

[15] Madden Supp. Report at 9-11, Ex. 46 (describing probit regression analysis).

[16] Madden Supp. Report at 13-14 and Tbl. 2b, Ex. 46.

[17] Madden Supp. Report at 14, Ex. 46.  Dr. Madden explains the importance of looking both at the period of pregnancy and the period of pregnancy in tandem with the period after pregnancy due to the cumulative nature of points under the SAG policy.  Discipline occurring after pregnancy may stem from discipline or points given during pregnancy. *See* Madden Supp. Report at 11, Ex. 46.

[18] Madden Supp. Report at 2, n.1, Ex. 46 (describing additional observations, particularly in counseling and written warnings).

motion for class certification, both the classwide methods and classwide results of Dr. Madden's analysis of discipline underscore the suitability of Plaintiffs' claims to classwide adjudication.[19]

## III. AT&T MOBILITY'S ARGUMENTS AT STATUS CONFERENCE ARE AT ODDS WITH THE COMPANY'S ATTENDANCE POLICIES AND PRACTICES

### A. There is No Dispute that AT&T Mobility Has Applied the SAG Policy Uniformly and Consistently Across Retail Employees for the Entire Period Covered by This Case

At the status conference, Defendant confirmed that the SAG Policy applies, without discretion, to all members of the proposed class, stating that AT&T Mobility "has to have a uniform way of granting excuses and not granting excuses"; "[t]hat discretion [within the SAG policy] was taken away years ago"; and application of the SAG "is essentially automatic."[20]

AT&T Mobility's "essentially automatic" application of its company-wide policy together with Dr. Madden's analysis undertaken on a classwide basis and revealing disparities adverse to pregnant workers underscores that Plaintiffs' claims can be adjudicated on a classwide basis.[21]  All putative class

---

[19] *See* Class Cert. Mem. at 27-29.

[20] Hr'g Tr. 17:12-24, 20:9-21:8.

[21] Class Cert. Mem. at 24-32, 36-38.  *See Scott v. Family Dollar Stores, Inc.*, 733 F.3d 105, 117 (4th Cir. 2013) (finding class's allegations of a corporate-imposed policy satisfied Rule 23(a)(2) where the employees suffered a disparate impact "as a direct result of this corporate-imposed" policy); *Ingram v. Corp. Receivables, Inc.*, No. 02 C 6608, 2003 WL 21982152, at *3 (N.D.

members' claims are unified by the same overriding question: whether AT&T Mobility's SAG policy violates the PDA by excluding pregnancy and related conditions from the SAG policy and, accordingly, failing to excuse the absences of pregnant workers where others similar in their ability to work had their absences excused.[22]  The answer to that question, regardless of whether it is "yes" or "no," will be the same for every member of the putative class. This is the hallmark of a claim susceptible to class treatment.[23]

B. The Facially Discriminatory and Burdensome Nature of AT&T Mobility's Attendance Structure for Pregnant Employees is Common to the Class.

During the December status conference, AT&T Mobility inaccurately described Plaintiffs' PDA claims and its own attendance policies and

---

Ill. Aug. 19, 2003) ("[C]laims arising out of standard documents present a classic case for treatment as a class action.") (internal citation omitted).  *See also Durham v. Rural/Metro Corp.*, 955 F.3d 1279, 1285-87 (11th Cir. 2020); *Hicks v. City of Tuscaloosa*, 870 F.3d 1253, 1261 (11th Cir. 2017).  *See generally Young v. United Parcel Service, Inc.*, 135 S. Ct. 1338 (2015) (courts must evaluate the extent employer's policy treats pregnant workers less favorably than similar non-pregnant workers).

[22] *See Thompson v. Jackson*, No. 1:16-CV-04217, 2018 WL 5993867, at *11 (N.D. Ga. Nov. 15, 2018) ("At bottom, common questions predominate over individualized questions here because Plaintiffs identify a specific policy enacted by Defendants. . . Defendants' common policy is the glue that holds these claims together."); *see also* Class Cert. Mem. at 36-37 (enumerating several common questions that govern Plaintiffs' claims).

[23] *See Pizarro v. Home Depot, Inc.*, No. 1:18-CV-01566-WMR, 2020 WL 6939810, at *8 (N.D. Ga. Sept. 21, 2020) (Ray, J.) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 352 (2011)); *see also* Class Cert. Mem. at 24.

procedures, manufacturing individual questions where none exist. Specifically, AT&T Mobility asserted that pregnant employees are granted excused absences for "*any* absence they *showed* was related to their pregnancy."[24]  This is a gross mischaracterization of the SAG policy.

As described in Plaintiffs' opening memorandum, the SAG policy, on its face, violates the PDA.[25]  It fails, in many cases, to even consider pregnancy as a basis for excused absence and systemwide imposes more onerous procedures on pregnant workers, as compared to non-pregnant workers, to secure excused absences and avoid discipline.  These defects in the SAG policy apply classwide and reflect a systemic failure to accommodate pregnancy.[26]  Specifically, the SAG policy itemizes thirteen categories of "protected" or "excused" absences and omits pregnancy.  Pregnant workers

---

[24] Hr'g Tr. 17:18–17:19 (emphasis added).

[25] Class Cert. Mem. at 24-29.

[26] The PDA expressly mandates that pregnant workers "be treated *the same* for all employment-related purposes . . . as other persons not so affected but *similar in their ability or inability to work*."  42 U.S.C. § 2000e(k) (emphasis added).  A policy that imposes a burden on employees seeking to have their pregnancy-related absences excuses that is not imposed on non-pregnant workers contravenes *Young*, 135 S. Ct. 1338.  In *Young*, the Supreme Court admonished that, "consistent with the [PDA]'s basic objective" of assuring that pregnancy does not cost women their jobs, the twin touchstones to determine whether an employer's policy discriminatorily burdens pregnant workers are feasibility and fairness: "[W]hy, when the employer accommodated so many, could it not accommodate pregnant women as well?" *Id.* at 1354-55.  AT&T Mobility cannot provide an answer that is, as *Young* requires, "sufficiently strong" to justify such a burden.  *Id.* at 1343.

consequently either must attempt to figure out if their absence can be shoehorned into one of the other categories, which frequently fails, or face disciplinary and professional consequences for unexcused absences due to pregnancy.[27]  Workers absent due to jury duty, bereavement, disability, family leave, and myriad other reasons need not play this guessing game as to whether the SAG policy excuses their absences.

AT&T Mobility also maintains a labyrinthine procedural framework that imposes greater burdens on pregnant workers as compared to others seeking excused absences.  These disparate procedural burdens are evident in AT&T Mobility's own policy documents – starting with the absence of the word "pregnancy" from the SAG policy and continuing throughout the company's materials purporting to guide employees in navigating the policy. As discussed in Plaintiffs' opening brief, those materials are virtually silent concerning the SAG policy's treatment of pregnancy-related absences.[28]

Further obscuring the pregnant worker's route to avoiding penalty for her absences is AT&T Mobility's equal employment opportunity ("EEO") policy, which only notes potential entitlement to short-term disability leave for pregnant workers while, in contrast, describing the need to accommodate

---

[27] Class Cert. Mem. at 16.
[28] Class Cert. Mem. at 15-21.

disability and religious needs, including providing leave as an accommodation.[29]  AT&T Mobility similarly fails to train supervisors about how pregnant workers might obtain excused absences under the SAG policy on the one hand, while providing training about implementing the interactive process to ensure accommodations for disability on the other.[30]  Numerous "job aids" utilized by AT&T Mobility's Centralized Attendance Group in implementing the SAG policy also make no mention of pregnancy.[31]

---

[29] Class Cert. Mem. at 21-22.  Short-term disability is available only for absences of more than seven days that are the result of conditions that rise to the level of a disability.  *Id.* at 19-20.

[30] Hrg. Tr. at 13:18-20.  *See, e.g.*, AT&T EEO & Harassment Policies, DEF0004745-4800, at 4765-69, attached to Dkt. 85-1 as Ex. 37 (explaining AT&T Mobility provides job accommodations under the ADA and for religious purposes); Class Cert. Mem. at 20-22 (discussing EEO policy's failure to address pregnancy accommodation while explicitly addressing disability accommodation and religious accommodation).  Plaintiffs have set forth the extensive classwide evidence confirming that the SAG policy does not offer leave as a job accommodation to pregnant workers, contrary to AT&T Mobility's contention.  *See infra* at n.31; *cf. Nelson v. Conduent Bus. Servs. LLC,* No. 1:18-CV-00669-SDG, 2020 WL 5587450, at *5 (N.D. Ga. Sept. 18, 2020) (finding commonality where arise out of a document "common to each member of the proposed class"); Class Cert. Mem. at 20 (job accommodations only available for qualifying disabilities).

[31] Class Cert. Mem. at 21-22.  At the status conference AT&T Mobility contended that pregnant workers are treated no worse than employees with cancer who need periodic time off for chemotherapy, in that AT&T Mobility would require both categories of workers to submit a doctor's note to have their absences excused under the SAG policy.  *See* Hrg. Tr. at 14:14-23.  This is wrong, both as a matter of law as well as by the terms of the SAG policy.  An individual with cancer has a qualifying disability under the ADA, *see* 29 C.F.R. §§ 1630.2(j)(3)(iii), (j)(1)(vii), and therefore would be entitled to intermittent leave as a job accommodation.  Under AT&T Mobility's job

AT&T Mobility's lack of attention to pregnancy compared to other bases for excused absences is a feature of its system.   Indeed, AT&T Mobility's corporate designee admitted at her deposition that, more than five years after the Supreme Court issued its seminal 2015 decision in *Young v. United Parcel Service, Inc.*, which requires employers to accommodate pregnant workers to the same extent they accommodate others, she had not heard of the case.   She acknowledged also that *Young* not prompted the company to revise its training materials for any personnel concerning pregnant workers' legal right to accommodation.[32]

An illustrative example of how the SAG policy disparately burdens pregnant employees as compared to non-pregnant employees is Ms. Webb herself.   Prior to her pregnancy, Ms. Webb sought leave under the Family and Medical Leave Act ("FMLA") for treatment after a shoulder injury.[33]   She applied for leave through the myWorkLife app and submitted a medical

---

accommodation process, a worker undergoing chemotherapy – who might experience symptoms similar to a pregnant worker, including nausea and fatigue, as well as the need to attend periodic doctor's appointments – would enjoy a straightforward procedural roadmap for excusing such absences, facilitated by the IDSC.   Most significantly, a cancer patient receiving chemotherapy would not need to submit successive medical certifications for each absence, in stark contrast to the pregnant worker who is not afforded the same path. *See* Class Cert. Mem. at 18-20.

[32] 30(b)(6) Deposition of Heather Miller, 427:17-430:8. attached as Ex. 48.

[33] Decl. of Kristine Webb, ¶ 8, attached to Dkt. 85-1 as Ex. 31.

certification explaining her condition.[34]   When she required leave for related appointments, she reported through the myWorkLife app that each absence was related to her shoulder injury.[35]   AT&T Mobility approved her absences and never required her to re-certify her need for FMLA coverage or otherwise fill out additional paperwork for each absence.[36]   When Ms. Webb was pregnant, however, she followed an identical process, at least initially – with an opposite outcome.   Instead of connecting her subsequent absences to her original certification, as it had with her shoulder injury, AT&T Mobility required Ms. Webb to re-certify that each absence was related to her pregnancy.[37]

As described above, Dr. Madden's analyses confirm Plaintiffs' experiences and are consistent with the documents and testimony in this case– namely, that pregnant workers' requests for excused absences are denied much more than those of non-pregnant workers and that pregnant workers face much more attendance-related discipline than their non-pregnant counterparts.[38]

---

[34] *Id.*
[35] *Id.*
[36] *Id.*
[37] *Id.* ¶ 14.
[38] *Id*.; *see also* Class Cert. Mem. at 17-18.

## IV. CONCLUSION

For the reasons stated above and set forth in Plaintiffs' Memorandum in Support of their Motion for Class Certification, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion for Class Certification.

Dated: February 18, 2021

<div style="margin-left: 40%;">

Respectfully submitted,

*/s/ Kalpana Kotagal*
Joseph M. Sellers*
Kalpana Kotagal*
Harini Srinivasan*
Cohen Milstein Sellers & Toll LLC
1100 New York Avenue, N.W.
East Tower, Suite 500
Washington, D.C. 20005
Telephone: (202) 408-4600
jsellers@cohenmilstein.com
kkotagal@cohenmilstein.com
hsrinivasan@cohenmilstein.com

Gillian L. Thomas*
American Civil Liberties Union
Women's Rights Project
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 549-2500
gthomas@aclu.org

Sean J. Young (GA Bar No. 790399)
American Civil Liberties Union
Foundation of Georgia, Inc.
1100 Spring Street, Suite 640
Atlanta, GA 30309
Telephone: (678) 981-5295
syoung@acluga.org

</div>

*Admitted Pro Hac Vice

Counsel for Plaintiffs

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify, pursuant to LR 5.1B and 7.1D of the Northern District of Georgia, that the foregoing PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION complies with the font and point selections approved by the Court in LR 5.1B. The foregoing pleading was prepared on a computer using 14-point Times New Roman font.


/s/    Kalpana Kotagal
Kalpana Kotagal

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| CYNTHIA ALLEN and KRISTINE WEBB,<br><br>        Plaintiffs,<br><br>v.<br><br>AT&T MOBILITY SERVICES LLC a/k/a AT&T MOBILITY LLC,<br><br>        Defendant. | Case No. 1:18-CV-3730-WMR |

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that, on this 18th day of February, 2021, I have electronically filed the foregoing PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION with the Clerk of the Court using the CM/ECF System, which will automatically send e-mail notification of such filing to the following attorneys of record:

Alex J. Maturi (*pro hac vice*)
Paul Hastings LLP
71 S. Wacker Drive, Suite 4500
Chicago, Illinois 60606
Tel: (312) 499-6000
alexmaturi@paulhastings.com

Kenneth W. Gage (*pro hac vice*) Brian M. Hayes (*pro hac vice*)
Paul Hastings LLP
200 Park Avenue, 30th Floor
New York, New York 10166
Tel: (212) 318-6000
kennethgage@paulhastings.com
brianhayes@paulhastings.com

Christine Cedar (*pro hac vice*)
Paul Hastings LLP
2050 M Street NW, 11th Floor
Washington, DC 20036
Tel: (202) 551-1700
christinecedar@paulhastings.com

Sheldon W. Snipe
AVP Senior Legal Counsel AT&T Services, Inc.
675 West Peachtree Street, NW
Suite 4300
Atlanta, Georgia 30308
Tel: (404) 893-7953
ss5526@att.com

*Counsel for AT&T Mobility Services LLC*

/s/   Kalpana Kotagal
Kalpana Kotagal